# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W. P.,[1] <br>     Plaintiff, <br> v. <br> ANDREW M. SAUL,[2] Commissioner of Social Security, <br>     Defendant. | NO. CV 18-8140-KS <br><br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

David W. P. ("Plaintiff") filed a Complaint on September 20, 2018, seeking review of the denial of his application for Supplemental Security Insurance ("SSI"). (Dkt. No. 1.) On October 19, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On June 28, 2019, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 24.) Plaintiff seeks an order reversing and remanding the ALJ's decision. (Joint Stip. at 21.) The Commissioner requests that the ALJ's

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Court notes that Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Andrew M. Saul for Nancy A. Berryhill as the defendant in this action.

1

decision be affirmed. (*Id.* at 20-21.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF PRIOR PROCEEDINGS

On March 30, 2015, Plaintiff, who was born on February 1, 1969, filed an application SSI.[3] (*See* Administrative Record ("AR") 26, 180-88; Joint Stip. at 2.) Plaintiff alleged disability commencing August 1, 2009. (AR 18, 180.) He previously worked as a drill helper (DOT[4] 930.684-026), construction worker I (DOT 869.664-014), and boilermaker helper II (DOT 805.664-010). (AR 26.) After the Commissioner initially denied Plaintiff's application (AR 106-15), he requested a hearing (AR 117). Administrative Law Judge Evelyn M. Gunn (the "ALJ") held a hearing on July 12, 2017. (AR 51.) Plaintiff and a vocational expert testified. (AR 51-70.) On October 5, 2017, the ALJ issued an unfavorable decision. (AR 18-28.) The Appeals Council denied Plaintiff's request for review. (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity from the March 30, 2015 application date through the date of the ALJ's decision. (AR 20.) She determined that Plaintiff had the following severe impairments: affective mood disorder, schizophrenia, and substance abuse. (*Id.*) After specifically considering listings 12.03 and 12.04, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (AR 21.) The ALJ determined that from the application date through the date of the ALJ's decision, Plaintiff

---

[3] Plaintiff was 46 years old on the date he filed his application for SSI and thus met the agency's definition of a younger person. *See* 20 C.F.R. § 416.963(c).
[4] "DOT" refers to the *Dictionary of Occupational Titles*.

2

had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: "he can understand, remember and carry out simple instructions. He can maintain concentration, persistence and pace for two-hour periods. He would work better with things than people. He should have no public contact." (AR 22.) The ALJ found that Plaintiff was unable to perform his past relevant work. (AR 26.) She then found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cleaner II (DOT 919.687-014), industrial sweeper (DOT 389.683-010), and scrap sorter (DOT 509.686-018). (AR 27.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the SSI application date through the date of the ALJ's decision. (AR 28.)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving

3

conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISCUSSION**

There are two issues in dispute: (1) whether substantial evidence supported the ALJ's RFC determination, and (2) whether the ALJ abused her discretion in failing to propound interrogatories requested by Plaintiff. (Joint Stip. at 4.) For the reasons discussed below, the Court finds that substantial evidence supports the ALJ's RFC determination. Further, although the ALJ erred in denying Plaintiff's request for interrogatories on procedural grounds, the error was harmless and, therefore, not an abuse of the ALJ's discretion.

**I.     The ALJ's RFC Assessment**

**A. Legal Standard**

A claimant's RFC represents the most a claimant can do despite his or her limitations. 20 C.F.R. § 416.945 (a)(1); *Reddick*, 157 F.3d at 724; *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). The ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original). The ALJ is responsible for determining credibility and

4

resolving conflicts in medical testimony. *Reddick*, 157 F.3d at 722. An ALJ can satisfy the specific and legitimate reasons standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Orn*, 495 F.3d at 632; *see* 20 C.F.R. § 416.945(a)(3) (stating that Commissioner will assess RFC "based on all of the relevant medical and other evidence").

**B. Evidence of Plaintiff's Treatment**

The record shows that in January 2012, Plaintiff was evaluated by Laja Ibraheem, M.D., a board certified psychiatrist. (AR 264-67.) Plaintiff reported experiencing depression, paranoia, memory loss, anxiety, and functional limitations. (AR 266-67.) Dr. Ibraheem observed that Plaintiff was able to dress and bathe himself, he was not disheveled, he had good hygiene, and he took no medications. (AR 264-65.) He was cooperative, and his thought processes were tight and goal-directed, with no flight of thought, looseness of association, thought-blocking, or distractibility. (AR 266) He had normal reality contact; there was no evidence of auditory or visual hallucinations, responses to internal stimuli, or paranoia. (*Id.*) Dr. Ibraheem reported that Plaintiff described his mood as "depressed" and his affect was appropriate to his mood. (*Id.*) He diagnosed Plaintiff with psychotic disorder, not otherwise specified ("NOS") and alcohol dependence. (*Id.*) He assessed that Plaintiff would be able to focus attention adequately; have no difficulty following one- or two-part instructions or remembering and completing tasks; have no difficulty being able to tolerate stress inherent in work, maintain regular attendance, and/or work without supervision; and be able to interact with supervisors, co-workers, and the general public. (AR 267.)

In June 2013, Plaintiff's mental status examination showed that his symptoms were "mild," despite reporting having experienced auditory hallucinations. (AR 300.) Plaintiff was cooperative, his thought processes were linear and logical, and he had normal cognition, insight, and judgment. (*Id.*) Plaintiff was incarcerated between July 2013 and December 2014,

5

during which time he had access to mental health services. (*See generally* AR 320-70.) Plaintiff's progress notes from that time reveal that he displayed psychotic features, including hallucinations, but his cognitive abilities were unimpaired and was not confused. (AR 320-26, 364-65, 370.) Plaintiff's mental status examinations revealed good cognitive functioning and no psychotic behavior. (AR 298, 300, 309, 345, 349, 355-56, 360-62, 368.) While he claimed to experience auditory hallucinations, he also claimed he was able to ignore them and stated that his medications, Zyprexa and Zoloft, were helpful. (AR 333, 341-42, 348.)

Between January and October 2015,[5] Plaintiff's progress notes showed that he reported a depressed affect, experienced hopelessness, helplessness, sleep disturbances, mood swings, paranoia, auditory hallucinations, and, variously, visual hallucinations. (AR 393, 396-99, 404, 407, 414, 420.) At times, Plaintiff reported having anger outbursts, irritable moods, poor concentration, and paranoid thoughts. (AR 397-98, 404, 406.) During the same period, Plaintiff also experienced some improvements in his mood and condition. (AR 401, 410.) Over the course of his assessments, Plaintiff remained cooperative, coherent, and calm. (AR 393, 396-99, 401, 404, 407, 410-11, 416-17, 420.) Plaintiff experienced some relief by using Zoloft and reported feeling good while compliant with his medications. (AR 382, 399, 401, 410.) He was diagnosed with psychotic disorder, NOS. (AR 402, 408, 412, 421, 423.) In July and August 2015, mental examinations also revealed that his cognitive functions were at baseline without existing deficits, and his insight and judgment were fair. (AR 412, 418.) In October 2015, Plaintiff had a global assessment of functioning ("GAF") score of 40. (AR 423.)

In June 2015, Plaintiff was evaluated by Ernest A. Bagner III, M.D., a board certified psychiatrist. (AR 388-92.) Plaintiff reported that he experienced auditory hallucinations, helplessness and hopelessness, fatigue, low motivation, social withdrawal, anxiety, paranoia,

---

[5] As a reminder, Plaintiff applied for SSI in March 2015. (*See* AR 180-88.)

and depression. (AR 388, 390.) Dr. Bagner reviewed Plaintiff's medical records, including a 2013 report indicating that Plaintiff had been diagnosed with a mood disorder, NOS. (AR 389.) Plaintiff drank two bottles of alcohol per week. (*Id.*) His mood was "nervous," his affect was flat, he denied suicidal or homicidal thoughts, and he did not exhibit looseness of association, thought disorganization, flight of ideas, thought blocking, tangentiality, or circumstantiality. (AR 390.) Dr. Bagner diagnosed Plaintiff with polysubstance dependence; rule out schizoaffective disorder, bipolar type; anti-social personality disorder; and a GAF score of 60. (AR 391.) Plaintiff's ability to follow simple instructions was mildly limited; to follow detailed instruction was moderately limited; to interact appropriately with the public, co-workers, and supervisors was moderately limited due to suspiciousness; to comply with job rules was not limited; to respond to changes in routine work setting was mildly limited; and to respond to work pressure in a usual work setting was moderately limited to due paranoia. (*Id.*) Plaintiff's daily activities were mildly limited. (AR 392.) His prognosis was fair with polysubstance rehabilitation. (*Id.*)

In August 2015, state agency consultant Paula Kresser, Ph.D., evaluated Plaintiff's medical record in connection with Plaintiff's initial disability determination. (AR 77-81.) She first found that Plaintiff had a medically determinable impairment in the form of schizophrenic, paranoid, and other psychotic disorders. (AR 77.) Dr. Kresser found that Plaintiff's medical symptoms could be reasonably expected to produce his symptoms, but his statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. (AR 78.) She found Plaintiff "partially credible," noting that despite allegations of depression and auditory hallucinations, he was well-spoken, able to bathe, cook, and shop, had a poor relationship with his family, "fair" relationships with his friends, and a long history of anxiety and psychotic disorder and of substance abuse. (*Id.*) Dr. Kresser completed a mental RFC assessment, concluding that Plaintiff was able to understand, remember, and carry out simple one- and two-step instructions; he could maintain concentration, persistence, and pace for periods of two hours,

7

perform work activities within a schedule, maintain regular attendance, be punctual, complete a normal workday and workweek, and could make simple work-related decisions; he would be limited to infrequent contact with the public, could relate adequately to coworkers and supervisors, could ask simple questions, request assistance, accept instructions, and respond appropriately to criticism from supervisors; and he was able to respond appropriately to changes in the work setting, and be aware of normal hazards. (AR 81.)

In November 2015, state agency consultant Eric Wiener, Ph.D., evaluated Plaintiff's medical record in connection with Plaintiff's application for reconsideration of his initial disability determination. (AR 91-96.) Noting that Plaintiff alleged that his symptoms had worsened, Dr. Wiener found Plaintiff "partially credible," but disproportionate to the objective evidence. (AR 91, 93.) Dr. Wiener reviewed the medical evidence and summarized it in his assessment. (AR 91-92.) He thereafter assessed Plaintiff's mental RFC, which was identical to the RFC assessed by Dr. Kresser. (*Compare* AR 81 *to* AR 96.)

In June 2016, Plaintiff was examined by Allen Abrams, M.D., a psychiatrist. (AR 450-51.) Dr. Abrams observed that Plaintiff was alert, oriented, cooperative, and eagerly reported how well he was doing in his polysubstance use recovery in an attempt to convince Dr. Abrams that was sincere in his recovery efforts. (AR 450.) His mood was "superficially pleasant over clear anxiety with an incongruently positive affect." (*Id.*) Thinking was clear, but illogical and inconsistent over the course of the discussion. (*Id.*) Plaintiff's judgment was impaired by immaturity and impulsivity. (AR 451.) Dr. Abrams diagnosed Plaintiff with psychotic disorder, NOS and a GAF score of 40, and continued his medications. (*Id.*)

Finally, the record contains evidence of Plaintiff's treatment between December 2016 and June 2017 at Kedren Community Health Center. (AR 492-533.) As relevant here, in June 2017, Plaintiff reported having crying spells and anger outbursts. (AR 531.) But in the same progress report, Plaintiff was noted as being cooperative and coherent; denied negative effects

8

from his medication and admitted to poor medication compliance; he also expressed satisfaction with his medication. (*Id.*) Plaintiff's condition was noted as being "stable for outpatient care," and Plaintiff was counseled about the importance of compliance with his medication. (AR 532.)

**C. The ALJ's Decision**

As stated above, the ALJ found that Plaintiff had an RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations: "he can understand, remember and carry out simple instructions. He can maintain concentration, persistence and pace for two-hour periods. He would work better with things than people. He should have no public contact." (AR 22.) The ALJ made the following findings in support of her assessment.

Plaintiff received minimal treatment for his impairments, consisting of intermittent mental health counseling and medication refills, which, when complied with, resulted in improved symptoms. (AR 23-34.) Plaintiff's mental status examinations showed minimal findings, and his consultative examiner observed that he could independently perform activities of daily living. (*Id.*) The evidence indicated that Plaintiff could cooperate and relate in an appropriate manner; none of his doctors imposed specific restrictions or offered limitations with respect to his ability to perform the mental demands of work activity; and his consultative examiner found that his thought processes were tight and goal-directed. (AR 24.) Plaintiff had normal reality contact, there was no evidence of hallucinations during his evaluation, and there was no evidence of paranoia or grandiose delusions. (*Id.*)

As to Plaintiff's mental functioning, the ALJ found that there was no evidence that Plaintiff lacked knowledge of standards of neatness and decorum or showed significant signs of tangential/circumstantial thought, loose associations, homicidal ideation, excessive paranoia, or excessive hallucinations or delusions. (*Id.*) The ALJ observed that there was no

9

indication of frequent anger outbursts or panic episodes/symptoms; the record also did not support findings of frequent manic episodes, significant memory loss, disorientation, significant oddities of thought, or frequent illogical thinking. (*Id.*) The ALJ found that Plaintiff's history of substance abuse was immaterial to his RFC. (*Id.*) Accordingly, the ALJ found that the fact that Plaintiff engaged in a full complement of daily activities and had fairly normal mental status examinations mitigated a finding of a severe mental impairment that would prevent his ability to perform work-related activities within the RFC. (*Id.*)

Turning to the opinion evidence, the ALJ gave partial weight to the opinions of Drs. Kresser and Wiener. (AR 25.) Noting that neither consulting physician had a treating or examining relationship with Plaintiff, had the opportunity to observe him, or reviewed the complete medical record, the ALJ stated that she did not rely heavily on their opinions in making her RFC assessment. (*Id.*) Rather, she stated that she "relied on the overall record," but nevertheless concluded that the consultants were specialists in their fields and gave weight to their opinions "inasmuch as they are consistent with the record as a whole." (*Id.*)

The ALJ gave the opinion of Dr. Ibraheem some weight, noting that although he personally observed Plaintiff, he did not have a treating relationship with Plaintiff and additional medical records were submitted after his 2012 assessment, which show that Plaintiff began more intense treatment for his condition. (*Id.*) The ALJ then gave the opinion of Dr. Bagner great weight, finding that his examination of Plaintiff was close to Plaintiff's March 2015 onset date, and was consistent with the record as a whole "which supports mild to moderate mental limitations." (AR 25-26.)

The ALJ concluded that her RFC assessment was supported by the medical evidence in the record; she noted that Plaintiff was somewhat limited due to his impairments, but "the impact of [his] symptoms d[id] not wholly compromise [his] ability to function independently, appropriately, and effectively on a sustained basis within the confines of the [RFC]." (AR 26.)

Additionally, while Plaintiff had some non-exertional limitations, the claimed intensity and persistence of his symptoms were inconsistent with the medical evidence as a whole. (*Id.*)

**D. Analysis**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because it did not capture Plaintiff's significant limitations in interacting with others. (Joint Stip. at 8.) Specifically, he argues that the ALJ failed to explain how her assessment comported with evidence of Plaintiff low GAF score, and the presence of frequent anger outbursts, panic symptoms, irritability, poor concentration, and paranoid thoughts. (*Id.*)

Substantial evidence supports the ALJ's RFC determination and the record fails to reflect significant limitations in Plaintiff's social interactions greater than the RFC the ALJ assessed. The record is replete with evidence of Plaintiff's cooperation with doctors. (*See, e.g.*, AR 266, 300, 393, 396-99, 401, 404, 407, 410-11, 416-17, 420, 450.) The record also contains evidence that Plaintiff *could* effectively interact with supervisors, co-workers, and the general public. (*See* AR 267). Yet, the ALJ generously assessed an RFC that reflected more significant limitations, and still found that Plaintiff was not disabled. Finally, opinion evidence in the record shows that doctors opined that Plaintiff had functional limitations, but could still perform some work and interact with co-workers, even if he should be limited to infrequent contact with the public. (AR 81, 96.)

Plaintiff's specific arguments in support of reversal are unavailing. He first argues that the ALJ erred in failing to explain how her assessment comported with evidence of his low GAF score. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a

disability . . . they may be a useful measurement." *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014). However, "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." *Id.*; *see also Graham v. Astrue*, 385 F. App'x 704, 706 (9th Cir. 2010) (finding GAF score not dispositive because it was assessed when plaintiff was not working).

First, the ALJ did not err in failing to address Plaintiff's GAF score. As a general matter, the ALJ's failure to discuss a GAF score does not constitute reversible error because a GAF score does not have any direct correlative work-related or functional limitations. *See Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015) (unpublished); *Lisa Marie V. v. Saul*, 2019 WL 3858559, at *8 (C.D. Cal. Aug. 16, 2019); *Erwinthanshea B. v. Berryhill*, 2019 WL 1330315, at *4 (C.D. Cal. Mar. 25, 2019). In this case, the ALJ's RFC assessment took into account Plaintiff's mental impairments and was supported by substantial evidence. *See McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir 2008). The fact that the record contains evidence that Plaintiff scored a GAF of 40 is not alone sufficient to warrant reversal. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (affirming finding of non-disability where plaintiff had a GAF of 40). Additionally, in June 2015, Dr. Bagner found that Plaintiff had a GAF score of 60, reflecting moderate limitations. (AR 391.) This score is consistent with the medical evidence supported the ALJ's RFC assessment, and to the extent the higher GAF score contradicts evidence in the record of a lower GAF score, the ALJ is responsible for resolving such contradictions. *See Andrews*, 53 F.3d at 1039.

Plaintiff's second argument, that the ALJ rejected the presence of frequent anger outbursts, panic episodes/symptoms, and other psychotic symptoms, is also unavailing. The ALJ observed that there was no evidence of *frequent* anger outbursts, panic symptoms, or other psychotic symptoms. (AR 24.) Substantial evidence supports this conclusion. Plaintiff correctly notes that the evidence does, in fact, contain some evidence of anger outbursts, irritability, panic symptoms, poor concentration, and paranoia. (*See, e.g.*, AR 397-98

12

(February 2015), 404, 406 (May 2015), 531 (June 2017).) However, these episodes were isolated and contemporaneous evidence noted that Plaintiff was cooperative and coherent, engaged with his treatment professionals, and his condition would improve with medication compliance and decreased substance use. (AR 397-98, 404, 406, 531.) To the extent Plaintiff disagrees with the ALJ's characterization of the above-noted evidence as infrequent, that is an evidentiary ambiguity within the ALJ's power to resolve. *See Andrews*, 53 F.3d at 1039.

In sum, the record shows that the ALJ's RFC assessment was supported by substantial evidence, and the ALJ neither erred in failing to consider Plaintiff's GAF score or limited evidence in the record of anger, panic, irritability, poor concentration, or paranoia. Accordingly, the ALJ's RFC assessment is free of legal error and must be affirmed.

## II. The ALJ Did Not Abuse Her Discretion In Failing to Propound Interrogatories

### A. Legal Standard

"A claimant in a disability hearing is not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts." *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988) (citing *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983)); 5 U.S.C. § 556(d). It is within the ALJ's discretion to decide when cross-examination is warranted. *Solis*, 719 F.2d at 30102 (holding that claimant is entitled to cross-examination where physician is a "crucial witness whose findings substantially contradict the other medical testimony"); *see also Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1480 (9th Cir. 1989) (holding that ALJ did not err in refuse to permit a question even though he had the discretion to allow it). "A claimant must request cross-examination by filing a written explanation of why the subpoena is reasonably necessary for a full presentation of the case . . . before the hearing date." *Kurtz v. Callahan*, 132 F.3d 39, at *2 (9th Cir. 1997) (citation omitted); 20 C.F.R. § 416.1450(d)(2) (providing that request

13

must be filed at least "10 business days before the hearing date"). Interrogatories are an adequate substitute for live cross-examination. *Solis*, 719 F.2d at 301.

**B. Background**

On June 29, 2017, Plaintiff wrote to the agency, requesting that it propound interrogatories on Dr. Bagner. (AR 258-60.) Plaintiff's proposed question focused on Dr. Bagner's assessed moderate limitation in Plaintiff's ability to interact with coworkers and supervisors due to suspiciousness. (AR 259.) It asked whether Dr. Bagner had the professional opinion that Plaintiff could, "on a regular and continuing basis (throughout a full-time work schedule)":

- o Sustain an ordinary routine without special supervision where those requirements are critical.
- o Work in coordination with or proximately to others without being (unduly) distracted by them, where those requirements are critical.
- o Complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, where those requirements are critical and strictly enforced.
- o Ask simple questions or request assistance, where those requirements are critical.
- o Accept instructions and respond appropriately to criticism from supervisors, where those requirements are critical.
- o Get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes, where those requirements are critical.
- o Respond appropriately to changes in a (routine) work setting, where those requirements are critical.

(AR 259-60.) Dr. Bagner was instructed to check all those in the above list that Plaintiff could perform. (AR 259.)

At Plaintiff's July 12, 2017 hearing, his counsel inquired whether the interrogatories had been answered by Dr. Bagner. (AR 68.) The ALJ replied, "[w]ell, basically, you would have to more or less file a motion to request the consultative examiner to answer these questions and you basically said that you sent them in." (*Id.*) The ALJ denied the request because "no one brought this to [his] attention" before the hearing. Later that same day, Plaintiff protested the ALJ's ruling, contending that he had submitted a timely request to propound interrogatories. (AR 262 (citing 20 C.F.R. § 1435(a)).) On July 14, 2017, the ALJ responded that Plaintiff's letter request "was not a motion for interrogatories"; she wrote that, at the hearing, she had denied Plaintiff's request to have Dr. Bagner complete the interrogatories, and in case that ruling was misunderstood, she again explicitly denied the request. (AR 172.)

**C. Analysis**

Plaintiff argues that he has a due process right to cross-examine Dr. Bagner, he need not comport with a particular form when submitting a request for interrogatories, and the Commissioner has the duty to assist him in preparing for a hearing by obtaining pertinent evidence. (Joint Stip. at 15-16.) In response, the Commissioner contends that the ALJ had the discretion to deny Plaintiff's request, there is no reasonable basis to believe Dr. Bagner's answers to Plaintiff's interrogatories would have provided necessary information that would have changed the outcome, and Plaintiff has failed to show that his due process rights were violated. (*Id.* at 16-18.)

The ALJ erred in denying Plaintiff's request to propound interrogatories on Dr. Bagner on the basis that Plaintiff did not file a "motion" for interrogatories. The regulations do not require parties seeking to propound interrogatories to file a "motion." They simply require

15

parties to, *inter alia*, "file a written request for the issuance of a subpoena with the [ALJ] or at one of our offices at least 10 business days before the hearing date." 20 C.F.R. § 416.1450(d)(2). Plaintiff complied with these requirements. He filed a written request for interrogatories on June 29, 2017 with the Social Security Administration Office of Disability and Review in Los Angeles, which was nearly two weeks before his July 12, 2017 hearing date. (AR 258.)

However, the ALJ's error in denying Plaintiff's request on procedural grounds is not a basis for reversal because Plaintiff has not shown that he was harmed by the ALJ's decision. *See Molina*, 674 F.3d at 1111. Plaintiff has not demonstrated that cross-examination of Dr. Bagner was "required for a full and true disclosure of the facts." *Solis*, 719 F.2d at 302. Dr. Bagner's evaluation does not contradict the substantial medical evidence in the record. *See id.*; *cf. Doan v. Berryhill*, 2017 WL 3337150, at *2 (S.D. Cal. Aug. 4, 2017) (finding reversible error where ALJ denied cross-examination of crucial witness "whose adverse testimony contradicted other medical evidence"). Although the ALJ gave Dr. Bagner's opinion great weight (AR 25-26), her decision relied on substantial evidence beyond Dr. Bagner's opinion. *Cf. Bradley v. Barnhart*, 2002 WL 523584, at *6 (N.D. Cal. Apr. 2, 2002) (holding that ALJ abused his discretion in denying claimant the right to cross-examine a vocational expert when his discretion "clearly relied" on the expert's opinion). The ALJ relied on evidence of Plaintiff's minimal treatment, the reported efficacy of his medications, his relatively mild objective symptoms, and his activities of daily living. (AR 23-24.) The ALJ also gave "partial" or "some" weight to the opinions of Drs. Kresser, Wiener, and Ibraheem, suggesting that she relied, at least to some degree, on those doctors' opinions when assessing Plaintiff's RFC. (AR 25.) Therefore, the ALJ's discussion makes clear that Dr. Bagner's opinion, which was largely consistent with the other evidence in the record, merely contributed to the ultimate RFC determination, and was not "crucial" to that determination.

//
//

16

Plaintiff has also not explained how Dr. Bagner's answers to his interrogatories would affect the ultimate non-disability determination. Plaintiff sought to use the interrogatories to clarify Dr. Bagner's use of the term "moderate" in describing some of Plaintiff's limitations. (*See* AR 391-92.) Assuming, arguendo, the term as used by Dr. Bagner is ambiguous, a clearer definition would not obtain a different result for Plaintiff because "moderate" limitations are not necessarily disabling. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (holding that substantial evidence supported ALJ's decision that claimant with moderate limitations did not have a severe non-exertional limitation); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding that a moderate limitation in concentration, persistence, and pace is adequately reflected in a restriction to simple work when a medical opinion has translated that moderate restriction into a more specific functional limitation). Additionally, the ALJ has the authority to resolve conflicts and ambiguities in evidence when assessing Plaintiff's RFC. *See Andrews*, 53 F.3d at 1039. The alleged ambiguity of the term "moderate" to describe a medical functional assessment falls squarely within that purview.

In sum, although the ALJ's basis for denying Plaintiff's request to propound interrogatories was erroneous, such error was harmless and, therefore, not an abuse of discretion. Accordingly, reversal on the ground is not warranted.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

//

//

Accordingly, it is ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: January 9, 2020

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE